JANVIER, Judge.
This suit is based on the alleged illegal seizure by defendant, Mossier Acceptance Company, doing business as Central Finance Company, of an automobile owned by plaintiff and on which the said defend *735 ant corporation held a chattel mortgage as security for a loan.
Plaintiff alleges that, on July 23, 1951, he purchased a Chevrolet automobile from a local dealer for $818.85 and that on the purchase price he paid $300 in cash and, for the balance of the price, costs and financing charges executed 15 promissory notes, payable one each month, each in the sum of $48.25, all secured by chattel mortgage on the said automobile. He alleges that the unpaid notes and the mortgage securing them are held by Central Finance Company; that he paid five of the said notes, and that in February, 1952, while he was “in the hospital and away from his home,” defendant “without legal right, court procedure or due process of law, seized said car which was in the garage of petitioner and removed said car from the premises without the consent, acquiescence, permission or knowledge of petitioner herein;” * * * “that the defendant herein refuses to surrender said car notwithstanding the fact that demand was made by petitioner herein to defendant herein for the return of said automobile.”
Plaintiff prays for judgment against defendant corporation in the sum of $1,818.-85 made up of the following items:
Cost of automobile $818.85
Humiliation, embarrassment and inconvenience, 700.00
Reasonable attorney’s fees 300.00
To this petition Mossier Acceptance Company filed answer. It averred that it is engaged in business in New Orleans under the trade name, Central Finance Company, and that it “financed” the transaction referred to by plaintiff, “taking as security for a loan” a mortgage on the automobile in question. Defendant denied that it illegally seized the automobile and averred that after two notes which had matured became delinquent, Melvina Gaines St. Thomas, the wife of the plaintiff, advised defendant corporation that her husband, the plaintiff, was confined in a hospital; that he, the husband, “should not and could not be disturbed, but that she, acting with his full knowledge and consent, was authorized and did request your respondent to take the mortgaged property, said 1946 Chevrolet Fleet Master Sedan, in cancellation of their account and in order to avoid the expenses and costs of legal procedure, plus attorney’s fees, as provided in the contract.”
Defendant further averred that, acting on this request and authorization, it accepted a release executed by the wife of the plaintiff; that it took the car and agreed to hold it for ten days with the understanding that if the account could not be brought up to date by that time, it would be sold and the proceeds devoted to the payment of the balance due on the purchase price. Defendant also averred that the balance had not been paid and that it had later sold the car for $450 which was its true value, and that the amount realized was not sufficient to pay the balance due on the loan. Defendant made no claim against plaintiff for the balance which it averred remained due after the application of the proceeds of the sale to the loan.
After the trial there was judgment dismissing plaintiff’s suit and he has appealed.
It is conceded by counsel for defendant corporation that if, without' resort to legal process and without authority of plaintiff and over his protest the car was seized and removed from his residence, there is liability for such damage or loss as plaintiff sustained, but it is argued that the record shows that the removal and sale of the car was effected with the full permission and authority of plaintiff’s wife and that plaintiff himself had authorized his wife to give defendant the necessary permission for the removal and sale of the car.
Albert J. Bertram, the collection manager of defendant corporation, testified from memoranda made by him on the “bookkeeping ledger card” of plaintiff. Fie said that the wife of plaintiff had spoken to him on the telephone and had told him that her husband was in the hospital and that the defendant must not communicate with him, but that they could not pay the balance due and that she asked that defendant “send out and get the car.” Bertram also said that after that conversation he had sent to plain *736 tiff, by registered mail, a letter in which he had referred to the conversation with plaintiff’s wife and had advised him in that registered letter that the car would be held for a certain time and that if by that time “satisfactory disposition” of the account had not been made the car would be sold. The record contains a registered return receipt showing that that letter was received and signed for by plaintiff’s wife.
It must be noted that though the said letter was dated February 12, 1952, in it it was stated that the “car would be held until January 22, 1952.” Bertram said that “in all probability” this was a typographical error. Evidently it was.
Gerald Grevemberg, an employee of the defendant corporation, says that he was advised that Mr. Bertram had ’phoned to plaintiff’s wife and that as a result he, Gre-vemberg, was sent out to the residence to contact the wife. He says that the plaintiffs wife told him that her husband was confined to a hospital and that under no circumstances should the matter be taken up with him; that she told him that “due to financial circumstances or otherwise” they could not pay the amounts due and that she further told him “to malee whatever disposition I so desired of the automobile.”
Plaintiff’s wife admitted that at that time she gave Grevemberg the keys to the car and turned on the lights so that he might see and that she also signed a document which is the “release” which is in the record. This release, by its terms, authorizes the defendant, without resorting to legal proceedings, to take the car and to sell it and to devote the proceeds to the payment of the amount due on the notes. To this document plaintiff’s wife signed his name and her own.
Plaintiff’s wife said:
“ * * * I didn’t know what I was signing. I was so frightened and scared I didn’t know what I signed. But he told me it was for to hold the car — to just sign and it was for to hold the car. * * * ”
Plaintiff himself says that he knew nothing about the removal of the car until after it had been taken and that at no time did he authorize his wife to allow defendant to remove it from his residence.
But there are in the record two letters written to defendant by plaintiff after the occurrence and in these letters he complains that the car had been taken and sold, but in each of them he shows plainly that, as a matter of fact, he had authorized his wife to permit the removal of the car. In the first of these letters he asked for “detailed information in regard to my 1946 Chevrolet surrendered to you for storage,” and in the second letter he said that he was sorry to note that the car had been disposed of and that he had instructed his wife to comply with the request of the defendant that the car be “stored” with defendant.
These letters show plainly that, though plaintiff insists that he at no time authorized his wife to allow the car to be taken by defendant, as a matter of fact he did authorize him to take it for storage.
There is nothing to indicate that the wife told defendant that the car could be taken only for storage. We are convinced, as was the District Judge, that the wife was authorized by the husband to deliver the car and that "she told the defendant corporation that they could not pay the amount due and that the corporation was authorized to take the car and sell it and to devote the proceeds to the retirement of the loan.
The judgment appealed from is affirmed at the cost of appellant.
Affirmed.